UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -                    **MEMORANDUM & ORDER**
                                              19-CR-15(KAM)

MICHAEL XIRINACHS,

        *Defendant.*

------------------------------------X

**KIYO A. MATSUMOTO**, *United States District Judge*:

    On June 12, 2025, the Court revoked Mr. Xirinachs's probation based on his plea of guilty to failing to advise his probation officer of a change in employment (ECF No. 39 (Violation of Probation Rep.) at 8 (Charge Four)) and failing to pay restitution (*id.* at 12 (Charge Five)), sentenced him to a term of 30 months of imprisonment, and ordered him to self-surrender by September 12, 2025. (ECF No. 79.)  Mr. Xirinachs timely appealed (ECF No. 84), and, on August 7, 2025, moved this Court for release pending appeal. (ECF No. 92.)  On August 13, 2025, the government and Probation Department filed their oppositions to Mr. Xirinachs's motion. (ECF Nos. 93 & 94.)

    For the reasons set forth below, the Court respectfully **DENIES** Mr. Xirinachs's motion for release pending appeal.

## BACKGROUND

On November 18, 2013, Mr. Xirinachs was charged by criminal information in the Central District of California with two counts of wire fraud in violation of 18 U.S.C. § 1343. Mr. Xirinachs waived his right to indictment by a grand jury and pleaded guilty to both counts pursuant to a November 18, 2013 agreement with the government. On January 8, 2014, the Honorable Stephen Wilson in the Central District of California accepted Mr. Xirinachs's guilty plea to the two wire-fraud counts. Mr. Xirinachs's guilty plea on January 8, 2014 was based on, as to Count One of the Information, his efforts to inflate, by fraudulent means, the value of a stock that he held, including by means of matched trading, and the issuance of press releases that omitted material information. (Jan. 8, 2014 Plea Tr. at 12:3 to 14:21.) Count Two of the November 18, 2013 Information was based on Mr. Xirinachs's false promises to investors in his hedge fund that he would invest their money in small companies when he in fact used their money for his own personal benefit. (*Id.* at 15:7-22). On January 11, 2019, Mr. Xirinachs's case was transferred from the Central District of California to this District. (ECF No. 1.)

Mr. Xirinachs was originally sentenced on June 13, 2022. Mr. Xirinachs faced a 20-year statutory maximum sentence on each of the two wire-fraud counts and an advisory sentencing range of 41-

51 months under the U.S. Sentencing Guidelines ("Guidelines"). The Court downwardly departed significantly, and imposed a sentence of three years of probation and restitution of $353,000 due and payable in full immediately. (ECF No. 30 (Judgment) at 1-4.) Mr. Xirinachs was thus spared a custodial sentence and was expressly advised that the Court expected him to pay restitution, and expected his "monthly [restitution] payments to increase" during the course of his probation. (June 13, 2022 Sent'g Tr. at 60:25 to 61:2.) The Court also ordered that restitution, if not paid in full immediately, must be paid at the *minimum* monthly rate of $250 or "20 percent of earnings each month after deductions required by law, whichever is greater." (*Id.* at 68:4-7.) The Court noted that the purpose of the minimum-percentage provision was to "take into account what we hope will be a brighter financial future." (*Id.* at 68:8-10.)

On August 23, 2024, the Probation Department filed a violation of probation report charging Mr. Xirinachs with six specified violations. (ECF No. 39 (Violation of Probation Rep.) at 6-13.) On September 27, 2024, the Court accepted Mr. Xirinachs's guilty plea to Charges Four and Five of the August 23, 2024 violation report. Charge Four of the August 23, 2024 violation report alleged that Mr. Xirinachs failed to report a change in his employment status in violation of the condition of his supervision

that required him to notify the Probation Department at least ten days before a change in his employment. (ECF No. 39 at 8.) As to Charge Five, a special condition of Mr. Xirinachs's probation was to pay restitution in the amount of $353,000, which was due and payable in full immediately, and if not paid in full, in minimum monthly amounts, as ordered by the Court. (ECF No. 30 (Judgment) at 4, 6.) Charge Five of the August 23, 2024 violation of probation report alleged that Mr. Xirinachs failed to pay restitution in the minimum amounts ordered by the Court in violation of the condition of his supervision requiring such payment. (ECF No. 39 at 12.)

In connection with Charge Four, Mr. Xirinachs allocuted that he failed to report that he had ceased to work for Atlantic Power and Gas;[1] that he "did not affirmatively disclose to Probation that [he] started working for Legacy Pickleball Club in 2023"; that he did not disclose that he had become a part owner or a 100 percent owner of Legacy Pickleball Club; that he failed to disclose an account of Adirondack Trust Company until ten days after he was sentenced on June 13, 2022; and that he failed to disclose that he derived income from Looking Glass Capital Consultants LLC

---

[1] Atlantic Power and Gas was an entity purportedly owned by Mr. Xirinachs's romantic partner which paid him a minimal, biweekly salary of $173. (See ECF No. 56-1 at 28 (CM/ECF numbering).) In December 2019, the entity ceased operating in New York by order of state regulators, but Mr. Xirinachs continued to report to Probation that he was employed at the entity until May 2024. (PSR ¶ 66; Sept. 27, 2024 Plea Tr. at 31:7-24.)

4

("Looking Glass"), a company that he wholly owned and controlled. (Sept. 27, 2024 Plea Tr. at 28:17 to 35:2.)

As to Charge Five, Mr. Xirinachs allocuted that for one or more months in which 20 percent of his monthly earnings exceeded $250, he nonetheless paid only $250 per month. (Sept. 27, 2024 Plea Tr. at 40:18 to 44:4, 46:3-9.) In total, as of August 23, 2024, more than two years after commencing his term of probation in June 2022, Mr. Xirinachs had paid only $6,500 toward his $353,000 restitution obligation. (ECF No. 39 at 15.)

On June 12, 2025, the Court revoked Mr. Xirinachs's probation and resentenced him on his original wire-fraud counts to 30 months of imprisonment. (ECF No. 79.) The Court found Mr. Xirinachs's failure to pay restitution to be willful based on the substantial undisclosed funds available to him throughout his probationary term. (*See, e.g.*, June 12, 2025 Sent'g Tr. at 70:25 to 71:21 (noting, in 2023 and 2024, "multiple unexplained transfers of assets, including multiple undocumented withdrawals and deductions of thousands of dollars in cash or withdrawals defined with a single-word description such as 'loan'").)[2]

---

[2] The Court's June 27, 2025 Text Order allowing Mr. Xirinachs to proceed *in forma pauperis* on appeal does not suggest that indigency was the reason for his failure to pay restitution as charged nearly a year earlier in the August 2024 violation report. *See Green v. Abrams*, 984 F.2d 41, 46 n.8 (2d Cir. 1993).

5

The Court considered both the original 41-51 month Guidelines range and the Guidelines for the violations of probation at the sentencing. *See United States v. Verkhoglyad*, 516 F.3d 122, 135 (2d Cir. 2008) ("[O]n revocation of probation, a resentence that falls within the range for the underlying crime of conviction will rarely qualify as too severe to be substantively reasonable."); *United States v. Hurtado*, 756 F. App'x 63, 69 (2d Cir. 2018) (same). The Court upwardly departed from the advisory sentencing range of 3-9 months under the Guidelines applicable to Mr. Xirinachs's Grade "C" violations of probation; an upward departure was justified because Mr. Xirinachs's "original sentence was the result of a downward departure." Guideline 7B1.4, application note 4. Moreover, Mr. Xirinachs's violative conduct "constitute[d] a willful and significant breach of the trust that [the Court] placed in him when sentencing him in June of 2022." (June 12, 2025 Sent'g Tr. at 64:23-25.) The Court's June 12, 2025 sentence was also based on a consideration of the factors set forth at 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3565(a)(2). The Court found Mr. Xirinachs's willful failure to pay restitution and other violative conduct to be so serious a breach of the Court's trust as to outweigh the conduct of Mr. Xirinachs that had initially prompted a probationary sentence at his original sentencing. *See Verkhoglyad*, 516 F.3d at 132.

6

## LEGAL STANDARD

"The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal." Fed. R. Crim. P. 46(c); *see also United States v. Montanez*, No. 20-cr-27(MPS), 2023 WL 2889358, at *2–3 (D. Conn. Apr. 11, 2023) (applying § 3143(b) to motion for release pending appeal of revocation of supervised release sentence).

Under 18 U.S.C. § 3143(b)(1), "a person who has been found guilty of an offense, has been sentenced to a term of imprisonment, and has filed an appeal" must be detained unless the Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in: (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

*United States v. Archer*, 813 F. Supp. 2d 339, 342–43 (E.D.N.Y. 2010); *accord United States v. Randell*, 761 F.2d 122, 124–25 (2d Cir. 1985). "The defendant bears the burden of establishing that he is entitled to release pending appeal," *Archer*, 813 F. Supp. 2d at 343 (citing *Randell*, 761 F.2d at 125), and there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).

7

**DISCUSSION**

I. **Risk of Flight and Danger to the Community**

Mr. Xirinachs contends, and the government does not dispute, that he is not a flight risk and that he does not pose a danger to the safety of any other person or the community. (ECF No. 92 at 9; ECF No. 93 at 4.) The Court finds that Mr. Xirinachs is unlikely to flee due to his record of appearing for Court proceedings as ordered. *See Archer*, 813 F. Supp. 2d at 343 ("if he had considered fleeing, he would have done so prior to sentencing"); *United States v. Reich*, 420 F. Supp. 2d 75, 88 (E.D.N.Y. 2006) (finding no risk of flight based on defendant's pre-trial conduct), *aff'd*, 479 F.3d 179 (2d Cir. 2007). The Court further finds that Mr. Xirinachs, who is "not convicted of any violent crime, or a crime with which violence is commonly associated," is unlikely to pose a danger to the safety of any other person or the community, though his restitution obligation to his victims remains largely unpaid. *United States v. Hart*, 906 F. Supp. 102, 103–05 (N.D.N.Y. 1995).

II. **Delay and Substantial Questions of Law or Fact**

A substantial question "is a close question or one that very well could be decided the other way" and a question which is more than "frivolous." *Randell*, 761 F.2d at 125 (internal quotation marks and citations omitted). "[W]hether or not an appeal is made to delay the sentence depends in large part on whether any

8

substantial appeal questions are presented." *Reich*, 420 F. Supp. 2d at 88–91. Mr. Xirinachs has not met his burden of showing that his appeal raises a substantial question of law or fact or is being pursued for purposes other than delay.

### A. Basis for Appeal

The basis for Mr. Xirinachs's appeal appears to be his argument that "[t]here exists ample evidence in the record, coupled with the language of the Court's June 16, 2022 Judgment [*sic*] to find that the amount that Mr. Xirinachs should have paid toward restitution at the time of his sentencing was substantially less than the amount that was found by the Court." (ECF No. 92 at 7.) Mr. Xirinachs's basis for appeal fails to raise a substantial question of law or fact for the following reasons.

**First**, the Court's calculation of $258,719.04 as the minimum amount that Mr. Xirinachs should have paid toward his restitution obligation was amply supported by the record. As a condition of his probation, Mr. Xirinachs was ordered to pay restitution in full and immediately in the amount of $353,000. (ECF No. 30 (Judgment) at 4.) "Restitution [wa]s due immediately," and Mr. Xirinachs was ordered to make payments toward his restitution obligation "at a minimum monthly rate of $250.00, or 20% of earnings per month after deductions required by law, whichever [wa]s greater, until paid in full." (*Id.*) To calculate the

9

minimum amount that Mr. Xirinachs should have paid toward his restitution obligation, the Court took $14,435.60, which is 20 percent of Mr. Xirinachs's reported W-2 earnings and adjusted earnings from Looking Glass, a company that he wholly owned and controlled, and added $244,283.44, which is 100 percent of unexpected windfalls that Mr. Xirinachs received from the sale of real estate and an inheritance. (June 12, 2025 Sent'g Tr. at 72:22 to 79:20); *see United States v. Kestenbaum*, 908 F. Supp. 2d 364, 370-79 (E.D.N.Y. 2012) (finding defendant's failure to pay restitution was willful due to his "complete control over every facet of [his] company"), *aff'd*, 552 F. App'x 74 (2d Cir. 2014); *cf.* 18 U.S.C. § 3664(n).[3]

The Court's calculation of $258,719.04 as the minimum amount that Mr. Xirinachs should have paid in restitution was conservative because it did not account for $12,500 that Mr. Xirinachs used to finance a hostile takeover bid of a company called AIM Immunotech; nor did the Court's calculation account for funds that Mr. Xirinachs used to pay for stock in SQI Diagnostics, even where the SQI Diagnostics stock was valued at more than $600,000 in 2023; nor did the Court's calculation account for funds spent by Mr. Xirinachs, through Looking Glass, a company that he wholly owned

---

[3]     An appended table visualizes the calculations resulting in $258,719.04 as the minimum amount Mr. Xirinachs should have paid toward his restitution.

10

and controlled, to pay for personal expenses for himself, his girlfriend, and his adult children; nor did the Court's calculation account for $172,000 that passed through Mr. Xirinachs's personal accounts but was, according to his undocumented assertion, "personal loans or directed investments"; nor did the Court's calculation account for taxable income of $59,213 resulting from Mr. Xirinachs's lapsed life insurance policy; nor did the Court's calculation account for funds that Mr. Xirinachs claimed to have paid as rent for his pickleball facility despite his landlord's contention that Mr. Xirinachs had failed to pay more than $100,000 in rent. (June 12, 2025 Sent'g Tr. at 79:20 to 93:1.)

Moreover, "[b]y waiving his right to a hearing" pursuant to *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), Mr. Xirinachs "abandoned his opportunity to attack" the calculation of the minimum amount he should have paid toward his restitution obligation. *United States v. Lee*, 818 F.2d 1052, 1057 (2d Cir. 1987); (June 12, 2025 Sent'g Tr. at 34:22 to 35:8.)

**Second**, even if, as Mr. Xirinachs contends, the minimum amount that he should have paid toward his restitution obligation was only $54,345.49, (ECF No. 92 at 5), he had paid only $6,500 in restitution at the time the violation of probation report was filed on August 23, 2024, and had paid a total of $49,250 at the time of his June 12, 2025 sentencing. (ECF No. 39 (Violation of Probation

11

Rep.) at 15; June 12, 2025 Sent'g Tr. at 73:1-7, 92:7.) Thus, at all relevant times, even when calculated in the manner that Mr. Xirinachs urges in his own submissions, Mr. Xirinachs's actual restitution payments fell below his own calculation of the minimum amount he was required to have paid toward his restitution obligation. In any event, the Court's finding that Mr. Xirinachs willfully refused to pay his restitution obligation was not based on the amount of Mr. Xirinachs's underpayment, but instead relied on his extensive earnings and assets, which were obfuscated from the scrutiny of the Probation Department and the Court and were diverted to personal or business expenses instead of paid toward Mr. Xirinachs's restitution obligation to his victims.

In addition to his willful failure to pay restitution, the Court's decision to revoke probation and resentence Mr. Xirinachs was also based on Mr. Xirinachs's separate violation to Charge Four of the August 23, 2024 violation report, failure to report a change in employment, the Court's finding that, in light of the nature of the underlying offenses and Mr. Xirinachs's characteristics, alternatives to imprisonment were not adequate to serve the purposes of punishment and deterrence, *see* § 3614(b)(2), and consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a)(1)-(7). (*See* June 12, 2025 Sent'g Tr. at 59:6 to 72:21, 93:2 to 94:16.) Moreover, the amount of Mr. Xirinachs's

12

restitution underpayment did not affect the Sentencing Guidelines applicable to his violative conduct or to his underlying offenses. (*See id.* at 43:14 to 46:11.)

Thus, the amount of Mr. Xirinachs's underpayment had no impact on the Court's finding that Mr. Xirinachs willfully underpaid restitution, had no impact on the Court's decision to revoke Mr. Xirinachs's probation, had no impact on the applicable Sentencing Guidelines, and was not the only factor the Court relied on in determining his sentence following revocation for his probation violations. The apparent basis of Mr. Xirinachs's appeal therefore "pose[s] no challenge to [his] conviction," and is insufficient to warrant release pending appeal. *Randell*, 761 F.2d at 125.

**B. Appellate Waiver**

Mr. Xirinachs waived his right to appeal if the Court imposed a sentence of 51 months or below. (*See* Nov. 18, 2013 Agreement ¶ 26; ECF No. 92 at 8; ECF No. 93 at 6.) Mr. Xirinachs asserts that his "appellate waiver must be strictly construed and read as applying [only] to Mr. Xirinachs's original sentencing in 2022." (ECF No. 92 at 8.) The government responds that the appellate waiver applies to Mr. Xirinachs's June 12, 2025 resentencing because "a probation violation does not trigger a sentence for the violation conduct, but a 'resentence' on the crime of conviction." (ECF No. 93 at 6-7 (quoting *Verkhoglyad*, 516 F.3d at 130 n.6).)

13

Although the validity and effect of Mr. Xirinachs's appellate waiver is ultimately a question to be determined by the Second Circuit, the Court notes that appellate waivers have been held to be effective in similar circumstances in the Second Circuit and other circuits. *See United States v. Boone*, 801 F. App'x 897, 903 (4th Cir. 2020) ("The provisions of the plea agreement — including the appeal waiver — are thus applicable to the sentence imposed at the probation revocation hearing." (citations omitted)); *United States v. Cooney*, 875 F.3d 414, 417 (8th Cir. 2017) (collecting cases in support of proposition that "an appellate waiver bars an appeal after resentencing"); *accord United States v. Ziming Shen*, 671 F. App'x 7, 8 (2d Cir. 2016) (on appeal of revocation of probation sentence, noting "waiver of appellate rights" could prevent review of certain challenges to defendant's sentence); *cf. United States v. Lajeunesse*, 85 F.4th 679, 692 (2d Cir. 2023) (appellate waivers are "presumptively enforceable").

## CONCLUSION

For the reasons set forth above, Mr. Xirinachs's August 7, 2025 motion for release pending appeal is respectfully **DENIED**. Mr. Xirinachs shall surrender for service of his sentence at the

institution designated by the Bureau of Prisons before 2:00 p.m. on September 12, 2025.

Mr. Xirinachs's August 7, 2025 motion and the responses filed by the government and the Probation Department were filed under seal.  Out of an abundance of caution, the Court initially files this Memorandum and Order under seal.  The parties shall confer and, within two weeks of the filing of this Memorandum and Order, file a joint proposal as to the portions of this Memorandum and Order, if any, that they believe should be redacted, and the legal basis for any proposed redactions.  After reviewing the parties' joint proposal, the Court will publicly file the Memorandum and Order with any appropriate redactions.

**SO ORDERED.**

Dated: August 18, 2025
      Brooklyn, New York

**Hon. Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

15

## APPENDIX

| Source of Funds | Amount of Funds | Corresponding Restitution Obligation |
|---|---:|---:|
| -- Earnings -- | | |
| W-2 Income (2022-2024) | $8,450 | n/a |
| Looking Glass (2022-2024) | $81,448 | n/a |
| Additional Payments to Child Support | ($17,720) | n/a |
| Subtotal of Earnings | $72,178 | $14,435.60 (20% of $72,178) |
| -- Unexpected or Unearned Income -- | | |
| 2023 Real Estate Sale | $157,274.30 | n/a |
| Inheritance from Mr. Xirinachs's Mother | $87,009.14 | n/a |
| Subtotal of Unexpected or Unearned Income | $244,283.44 | $244,283.44 (100% of $244,283.44) |
| -- Total -- | | |
| | $316,461.44 ($72,178 + $244,283.44) | $258,719.04 ($14,435.60 + $244,283.44) |

16